**UNITED STATES of America, Appellee,**

v.

**Kon YU–LEUNG, also known as Johnny Kon, Defendant,**

**John Ruotolo, Defendant–Appellant.**

**No. 258, Docket 94–1045.**

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1994.

Decided April 7, 1995.

rulings that, cumulatively, denied him a fair trial; (4) wrongfully disqualified his first trial counsel; (5) sentenced him unlawfully; and (6) that the district judge erroneously failed to recuse himself after being informed that Ruotolo had allegedly threatened his life. Having closely examined the record, we summarily reject all but three of these arguments as frivolous. Although the remaining three claims—one based on the district court's denial of his suppression motion, one based upon the district judge's failure to recuse himself, and the last stemming from the district court's admission of allegedly irrelevant and prejudicial evidence at trial—do merit some discussion, we conclude that they do not warrant a reversal of the conviction. We therefore affirm the district court's judgment and sentence in all respects.

Joel A. Brenner, East Northport, NY, for appellant.

Catherine E. Palmer, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Peter A. Norling, Patricia A. Pileggi, Asst. U.S. Attys., on the brief), for appellee.

Before: MINER, ALTIMARI and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

John Ruotolo appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York (Platt, Chief Judge). After a trial, the jury found him guilty on one count of conspiracy to import heroin in violation of 21 U.S.C. § 963, and on two counts of heroin importation in violation of 21 U.S.C. §§ 952 and 960. The district court sentenced Ruotolo to three consecutive ten year prison terms, a lifetime term of special parole, and a $150 special assessment.

On appeal, Ruotolo presents a catalogue of claims. In addition to his contention that there was insufficient evidence to sustain the jury's verdict, Ruotolo maintains that the district court: (1) erroneously denied his motion to suppress evidence; (2) improperly admitted evidence of uncharged crimes; (3) made several other erroneous evidentiary

## BACKGROUND

In December 1987, Ruotolo, along with 9 others, was indicted and charged with participating in an international heroin trafficking organization that conspired to import hundreds of pounds of heroin into the United States. Ruotolo played the middleman. On several occasions he obtained heroin shipments from the conspiracy's couriers, delivered them to customers and collected the proceeds.

Although the indictment charged that the overall conspiracy lasted from January 1984 to December 1987, Ruotolo's participation ended sometime in August 1984. At that point, Ruotolo's co-conspirators began to believe that he had stolen $400,000 and 14 kilograms of heroin from them. Thereafter, they refused to deal with him and, in fact, planned to murder him.

In the evening of March 13, 1988, agents of the Drug Enforcement Administration arrested Ruotolo at his home in Montclair, New Jersey. Six other members of the conspiracy were also arrested in New York, Hong Kong and Japan. After substantial litigation over the suppression of physical evidence seized from Ruotolo's home at the time of his arrest, *see United States v. Yu–*

*Leung,* 910 F.2d 33 (2d Cir.1990),[1] Ruotolo's trial began on September 30, 1991. Ruotolo was the only defendant to stand trial; all of his former associates who had been arrested had already pleaded guilty to various heroin trafficking offenses.

At trial, the government presented four cooperating witnesses: Kon Yu–Leung ("Kon"), the conspiracy's leader, and three other self-declared participants in the conspiracy, Lau Shu Ming ("Lau"), Ronnie Yin ("Ronnie") and Luk Pong–Ki ("Luk"). These witnesses testified to Ruotolo's membership in the drug ring and more. It is the additional content of their testimony that Ruotolo strenuously contests.

Despite the fact that Ruotolo's participation in the drug scheme was unilaterally terminated by Kon in August 1984, Kon testified at trial about his own continued criminal activities after August 1984. Kon described the seizure by the police of approximately 300 pounds of heroin in November 1984, the shipment of approximately 1000 pounds of heroin between January and June 1985, the successful importation of 92 pounds of heroin in November 1986, a "big, big" heroin seizure in December 1986, a 90–pound cocaine seizure in January 1988, and a 95–pound heroin shipment later in 1988—all of which involved Kon's actions after Ruotolo had been excluded from the gang. Kon also testified to five drug-related killings that he orchestrated, none of which involved Ruotolo.

Similarly, the other co-conspirators testified as to the drug operation and their involvement in it well after Ruotolo was no longer a participant. Lau recounted for the jury several post-August 1984 heroin trans-

actions, including the November 1984 seizure, the receipt of $10 million in drug sales between November 1984 and December 1986, a 1985 drug seizure in Seattle, the removal of $1 million in drug money from the United States in October and November 1986, and a 1986 drug seizure in Thailand. Ronnie also testified about the November 1984 heroin seizure, four or five drug importations in 1985 and the collection of approximately $1 million in related proceeds, as well as to the murder of a friend of his by Kon. And finally, Luk capped-off this line of testimony by describing the November 1984 seizure, the laundering of millions of dollars in foreign drug money between October and December 1986, the purchase of drug smuggling paraphernalia in Thailand in November and December 1986, the Thailand seizure in January 1987 and a cocaine seizure in February 1987.

Ruotolo's trial counsel[2] did not object to the admission of any of this testimony regarding drug transactions and murders that Ruotolo concededly had nothing to do with. Nevertheless, Ruotolo now claims on appeal that the district court's admission of such evidence was extremely prejudicial to his defense and that, even in the absence of an objection, it constitutes reversible error. He also maintains that his consent to the search of his house was coerced, and that the evidence found there should have been suppressed. Finally, Ruotolo argues that the district judge should have recused himself after learning that he, Ruotolo, allegedly threatened his life.

Given the facts of this case, we disagree with all three of these claims.

"at least on the facts presented in this case, Ruotolo's consent to the search of his residence was not a critical stage of the criminal proceeding against him." *United States v. Yu–Leung,* 910 F.2d 33, 40 (2d Cir.1990). Nevertheless, we remanded the case to the district court for further consideration of Ruotolo's suppression motion "in light of established fourth amendment principles governing the issue of voluntariness." *Id.* at 41.

---

1. The present appeal is not the first time that this case has been before us. After an initial hearing, the district court suppressed certain physical evidence that the government had seized from Ruotolo's home during a search to which Ruotolo consented. The district court ruled that a post-indictment consent to search involves a critical stage in a criminal prosecution to which the sixth amendment right to counsel attaches. Because the government agents did not inform Ruotolo that he was under indictment when he agreed to the search, the district judge concluded that Ruotolo neither waived his right to counsel nor consented to the search. We reversed and held that

2. Ruotolo's appellate counsel did not represent him at trial.

## DISCUSSION

### A. *The Voluntariness of Ruotolo's Consent to the Search*

█ In our earlier decision in this case, after reversing the district court's sixth amendment suppression of certain evidence seized by government agents at the time of Ruotolo's arrest, we remanded for a review of "the *totality* of the circumstances" surrounding the search of Ruotolo's home and for a determination of whether it was voluntary or coerced in light of fourth amendment principles. *See Yu–Leung,* 910 F.2d at 41. We recounted, at length, the facts regarding Ruotolo's arrest, the agents' treatment of Ruotolo's family and the manner by which the agents obtained Ruotolo's and his wife's written consent to search their home. *See id.* at 35–36. We need not repeat that discussion here. It is enough to say that Ruotolo continues to maintain that the agents terrorized his family and that their refusal

> to allow him to contact his attorney, the lateness of the hour, the presence of six DEA agents in his home, and the assurance that they would remain there indefinitely pending the availability of a search warrant combine to require a finding that his consent was not voluntarily given.

*Id.* at 41.

On remand, the district court conducted a supplemental suppression hearing. Despite Ruotolo's claims of government coercion, Chief Judge Platt determined that Ruotolo's consent to the search of his home was not coerced. With respect to the agents' alleged abuse of the Ruotolo family, Judge Platt adhered to his prior credibility evaluations and found that most of the family members' testimony was either "mistaken, contrary to common sense or persuasively contradicted by other testimony." And noting that Ruotolo was, himself, a retired New York City police officer, Judge Platt further determined that

> [a]lthough perhaps reluctant, in view of the totality of the circumstances, Ruotolo's consent was voluntary. In essence Ruotolo's consent was a deal struck between a former experienced police officer and the arresting agent, after full *Miranda* warn-

ings and notice that consent could be refused. The agent's agreement to Ruotolo's conditions that the consent could be withdrawn at any time during the search and that the agents were to be accompanied by both elder Ruotolos as they searched through the house further reveals a "bargained for" consent.

Ruotolo challenges these findings on this appeal. It is well established, though, that "[w]e 'will not overturn a district court's finding that a defendant voluntarily consented to a search, unless the finding was clearly erroneous,'" *United States v. Hernandez,* 5 F.3d 628, 632 (2d Cir.1993) (quoting *United States v. Zapata–Tamallo,* 833 F.2d 25, 27 (2d Cir. 1987) (per curiam)), and on this record, we cannot say that the district court's voluntariness ruling is erroneous. We therefore affirm the district court's denial of Ruotolo's suppression motion.

### B. *Ruotolo's Recusal Claim*

█ For the first time on appeal, Ruotolo argues that Chief Judge Platt committed reversible error by failing to recuse himself from the case after we reversed his initial suppression ruling and remanded for further proceedings. Ruotolo bases this claim, in part, on the fact that the government advised Judge Platt that Ruotolo had allegedly threatened his life. The government also told Judge Platt, however, that it did not consider the death threats to be serious. Nevertheless, according to Ruotolo, the knowledge of these supposed death threats presumptively biased Judge Platt against him, infected the district court's subsequent rulings and thus deprived him of a fair trial.

█ This claim need not detain us long. When the government informed Judge Platt of Ruotolo's alleged threats, it also advised Ruotolo of its actions. Ruotolo failed to file a timely disqualification motion before Judge Platt "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim," however, and we therefore conclude that he waived his right to do so. *See Polizzi v. United States,* 926 F.2d 1311, 1321 (2d Cir.1991) (citation omitted). Although we agree that a defendant's alleged death threats against a judge may, in some

cases, sufficiently raise the specter of bias to warrant the judge's recusal even in the absence of a formal recusal motion, *see, e.g., United States v. Greenspan,* 26 F.3d 1001, 1005–07 (10th Cir.1994), this is not such a case. We note that the government had already advised Judge Platt of Ruotolo's alleged threat *before* the district court granted Ruotolo's motion to suppress evidence on sixth amendment grounds. Moreover, Judge Platt never made any statements or any other indications that would suggest that he considered the death threats to be serious. *See Greenspan,* 26 F.3d at 1006 (trial judge accelerated the date of defendant's sentencing hearing "for the stated reason that the court wanted to get [him] into the penitentiary system as quickly as possible"). Given that Judge Platt provided Ruotolo with the requested relief (suppression of incriminating evidence) despite his knowledge of Ruotolo's alleged threat, we would be hard pressed to say that there exists the kind of basis for Ruotolo's personal bias claim that might justify our requiring the judge's recusal even in the absence of a timely motion on Ruotolo's part.

### C. *The Admission of Allegedly Irrelevant and Prejudicial Evidence*

#### 1. ·The Preservation of Ruotolo's Appellate Claim

■ Generally, in order to preserve an evidentiary claim for appeal, a party must make a "timely objection" at trial. Fed. R.Evid. 103(a)(1). "To be timely, an objection ... must be 'made as soon as the ground of it is known, or reasonably should have been known to the objector.'" *Hutchinson v. Groskin,* 927 F.2d 722, 725 (2d Cir.1991) (quoting *United States v. Check,* 582 F.2d 668, 676 (2d Cir.1978)); *see also United States v. Pujana–Mena,* 949 F.2d 24, 33 (2d Cir.1991) (discussing considerations in determining timeliness of trial objections). Ruotolo concedes that his counsel took no exception whatsoever to the allegedly prejudicial testimony at trial. He contends, however, that this point was properly preserved for appellate review by virtue of his pre-trial motion for severance. In that motion, which Ruotolo filed in October 1988, he argued

that: (1) only three of the fourteen counts in the indictment involved allegations against him; (2) as a result, most of the evidence that the government would produce at trial would be irrelevant with respect to the charges against him; and (3) such evidence would have a "spillover effect" and thereby unjustly tar him in the eyes of the jury. On that basis, Ruotolo requested the district court to sever his trial from that of his co-defendants. Because Ruotolo's co-defendants all pleaded guilty before trial, however, the district court denied his motion as moot.

Having flagged for the district court the potential for unfair contamination by evidentiary fallout (albeit, three years before trial and in the quite different context of a severance motion), Ruotolo maintains that he preserved his appellate claim as a matter of law. This argument shows stretchmarks. In effect, Ruotolo asks us to treat his motion for severance as a motion *in limine* to preclude the introduction of arguably irrelevant and prejudicial evidence. But even if we were to view his severance motion in that light, the circumstances of this case would require us to find that Ruotolo had failed to preserve his objection.

In cases involving the admission of *relevant* yet potentially prejudicial testimony, we have held that defendants may not rely upon an *in limine* objection to preserve their claim for appeal. *See United States v. Weichert,* 783 F.2d 23, 25 (2d Cir.) (per curiam), *cert. denied,* 479 U.S. 831, 107 S.Ct. 117, 93 L.Ed.2d 64 (1986). Because "an appellate court [cannot] review a trial court's balancing of probative value and prejudice without reference to the witness's actual testimony," a defendant must both confront and challenge an adverse evidentiary decision at trial "'to raise and preserve for review' the correctness of this ruling." *Id.* (quoting *Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984)); *see also United States v. Griffin,* 818 F.2d 97, 105 (1st Cir.) (holding "that to raise and preserve for review the claim of improperly constructing the rule 403 balance, a party must obtain the order admitting or excluding the controversial evidence in the actual setting of the

trial"), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987).

Here, however, the claim is that the evidence was totally *irrelevant*. And with respect to evidentiary questions that are not contextually bound, courts have held that a

> motion *in limine* may preserve an objection when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pre-trial hearing, and (3) is ruled upon without equivocation by the trial judge.

*United States v. Mejia–Alarcon*, 995 F.2d 982, 986 (10th Cir.) (holding that *in limine* motion preserved defendant's objection to admissibility of prior crime conviction under Fed.R.Evid. 609(a)(2)) (citing cases from the Third, Eighth and Ninth Circuits), *cert. denied*, —— U.S. ——, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993); *cf. Ginett v. Computer Task Group, Inc.*, 11 F.3d 359, 361 (2d Cir. 1993) (pre-trial *in limine* motion preserved objection to jury instruction where objecting party "clearly set forth his position" in the motion and after being "fully apprised" of the party's position, the district court "flatly rejected" it).

But even treating the present case as falling within this second category of *in limine* motions does not help Ruotolo's claim. As noted above, because all of Ruotolo's co-defendants pleaded guilty prior to trial, the district court denied his motion for severance as moot and thus never reached the merits. Because the evidentiary issue was not "ruled upon without equivocation by the trial judge," Ruotolo failed to meet the third requirement for properly preserving his claim through an *in limine* motion. After the district court dismissed Ruotolo's severance motion as moot, he did not attempt to present even obliquely a specific relevancy objection for the court's consideration. Perforce, the district court's pre-trial ruling on this issue was *not* "unequivocal"—it was non-existent.

### 2. *Plain Error*

██ As an alternative approach, Ruotolo claims that the district court committed plain error in allowing the cooperating witnesses' testimony regarding their post-August 1984

criminal activities to go to the jury, and we should therefore address Ruotolo's complaint despite his failure to object at trial. The governing rule provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b). To receive our attention though, "[t]he error must be 'so plain [that] the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'" *United States v. Shaoul*, 41 F.3d 811, 817 (2d Cir.1994) (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)) (internal quotation omitted).

In *United States v. Olano*, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court set forth the applicable framework for appellate "plain error" review. We have stated that under *Olano*,

> [r]ule 52(b) places three limits on appellate authority to review errors not preserved at trial. First, there must be "error," or deviation from a legal rule which has not been waived. Second, the error must be "plain," which at a minimum means "clear under current law." Third, the plain error must, as the text of Rule 52(b) indicates, "affect[ ] substantial rights," which normally requires a showing of prejudice.

*United States v. Viola*, 35 F.3d 37, 41 (2d Cir.1994) (citations omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995).

*Olano* carefully distinguished the concept of waiver from that of forfeiture. The Court stated that "[w]hereas forfeiture is the failure to make the timely assertion of the right, waiver is the 'intentional relinquishment or abandonment of a known right.'" —— U.S. at ——, 113 S.Ct. at 1777 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Thus, forfeiture does not preclude appellate consideration of a claim in the presence of plain error, whereas waiver necessarily "extinguishes" the claim altogether. *Id.* at ——, 113 S.Ct. at 1777.

██ Courts have not always verbally adhered to the distinction when speaking about a claim of plain error that arises out of a

party's failure to assert an evidentiary objection. Thus, they often refer to a party as having "waived an objection" when, in fact, they mean that the party has only forfeited the objection. But the substantive distinction remains both clear and crucial. If a party's failure to take an evidentiary exception is simply a matter of oversight, then such oversight qualifies as a correctable "forfeiture" for the purposes of plain error analysis. If, however, the party consciously refrains from objecting as a tactical matter, then that action constitutes a true "waiver," which will negate even plain error review. *See, e.g., United States v. Coonan,* 938 F.2d 1553, 1561 (2d Cir.1991) (where defendant unsuccessfully attempted to distance himself from "the type of violence and brutality that signified" gang membership and strategically "welcomed the admission of macabre details" of the gang's violent activities prior to his joining, he "waived appellate review" of any plain error claim), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); *United States v. Weiss,* 930 F.2d 185, 198 (2d Cir.) (defendant who withdrew trial objection to the exclusion of documents for tactical purposes "waived" his right to appeal the district court's exclusion), *cert. denied,* 502 U.S. 842, 112 S.Ct. 133, 116 L.Ed.2d 100 (1991); *cf. United States v. Wynn,* 845 F.2d 1439, 1443 (7th Cir.1988) (defendant's strategic decision not to object under Rule 404(b)

to the introduction of witness testimony to support his theory that he was "simply the innocent victim of a frame-up" makes a finding of plain error unlikely).

The distinction between forfeiture and waiver brings our plain error analysis to a grinding halt.[3] It is apparent that Ruotolo's failure to object at trial to the challenged testimony was a strategic choice. From start to finish, the theory of Ruotolo's defense was that he was an innocent victim of false accusations made by unsavory drug runners who desperately wanted to curry favor with the government. The record shows that, beginning with his lawyer's opening statement, Ruotolo argued to the jury that Kon was not worthy of belief *because* he was both a murderer and responsible for illegally importing an enormous amount of drugs into the country. In fact, as a means of undermining Kon's credibility, Ruotolo's counsel on cross-examination questioned Kon extensively about all of the heroin shipments that Kon had arranged and the total amount of proceeds that he had collected. This line of questioning was in no way limited to activity that occurred during the time when Ruotolo was allegedly involved in the conspiracy—that is, prior to August 1984.

Moreover, just prior to trial, Ruotolo vigorously objected to the admission of back-

---

**3.** Although we will not engage in a full plain error analysis, we think it appropriate to comment on one of the government's arguments. The government conceded only that Ruotolo's "active involvement" in the conspiracy ceased in July 1984. *See* Appellee's Br. at 46 & n. 18. Thus, both in its brief, *see id.,* and at oral argument the government maintained that the introduction of post-August 1984 evidence of the conspiracy's criminal activity was appropriate because Ruotolo "repeatedly sought to re-establish himself actively in Kon's successful and lucrative operation." In other words, after Kon both threw him out of the drug ring and planned to kill him, Ruotolo nevertheless remained a member of the conspiracy—perhaps in a state of forced semi-retirement. We find this contention more than suspect.

By definition, conspiracies require agreements. *See United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947) ("[i]ts essence is in the agreement or confederation to commit a crime, and that is what is punishable as a conspiracy"); *United States v. Greenfield,* 44 F.3d 1141, 1150 (2d Cir.1995) ("A conspiracy

exists when persons combine and agree for the purposes of committing an unlawful act"). And notwithstanding the government's characterization, it is clear that Kon terminated his co-ventureship with Ruotolo. Consequently, Ruotolo's unilateral "attempt to regain his lucrative position" with Kon, *see* Appellee's Br. at 46 n. 18, was, at worst, an attempted conspiracy—a creature unknown to federal criminal law. *See United States v. Harris,* 733 F.2d 994, 1005 (2d Cir. 1984) ("The federal courts follow the bilateral approach to conspiracy, ... under which unless at least two people commit the act of agreeing, no one does.") (citing *United States v. Rosenblatt,* 554 F.2d 36, 38 n. 2 (2d Cir.1977)). Thus, had Ruotolo properly objected at trial, the government could not have used this theory to establish Ruotolo's continued participation in Kon's conspiracy after August of 1984, and thereby bootstrap the introduction of evidence concerning the conspiracy's post-August 1984 activities. We do not address whether evidence of Ruotolo's alleged attempts to regain entry into the conspiracy might have been admissible for some other purpose.

ground evidence regarding his own alleged criminal activities, which supposedly occurred before he joined the heroin conspiracy. He objected to this evidence on the grounds that it was irrelevant and prejudicial. This manifest pre-trial concern to guard against unfair prejudice through one type of "irrelevant evidence" strongly suggests to us that Ruotolo's trial lawyer did not simply fall asleep at the wheel when another type of "irrelevant evidence" was presented at trial. Indeed, given the sheer quantity of unchallenged yet allegedly prejudicial testimony of this latter sort that is in the trial record, Ruotolo's lawyer would have had to have suffered from aggravated narcolepsy for us to believe that his failure to object did not reflect a clear and conscious tactical decision. We conclude that Ruotolo waived his right to appeal from the district court's admission of the challenged testimony. *See Coonan,* 938 F.2d at 1561; *Weiss,* 930 F.2d at 198.

## CONCLUSION

Having considered the remainder of Ruotolo's claims, and having found them to be without merit, we affirm the conviction and sentence in its entirety.