108 F.3d 1370
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES OF AMERICA, Appellee,
v.
Trevor BACCHUS and Arundel Thompson, Defendants-Appellants.
 Nos. 96-1486(L), 96-1557.
 United States Court of Appeals, Second Circuit.
 March 18, 1997.
 
 Maurice H. Sercarz, Esq., New York, New York, for Trevor Bacchus and Stuart D. Rubin, Esq. Brooklyn, New York for Arundel Thompson, for Defendants-Appellants.
 Sung-Hee Suh, Esq. Assistant United States Attorney, New York, Eastern District of New York, Brooklyn, New York, for Appellee.
 Present: WALKER JR., McLAUGHLIN, and WOOD JR.,* Circuit Judges.
 GLASSER, J.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York, and was argued by appellant Arundel Thompson and by appellee, and was submitted by appellant Trevor Bacchus.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.
 
 
 3
 Defendant-appellant Trevor Bacchus ("Bacchus") was convicted, following a jury trial, of receiving and possessing stolen goods in violation of 18 U.S.C. § 659 and of conspiracy, in violation of 18 U.S.C. § 371. Bacchus was sentenced to 40 months' imprisonment and a three year period of supervised release that included as a special condition the requirement that Bacchus be deported following his term of imprisonment. Defendant-appellant Arundel Thompson ("Thompson"), Bacchus's co-defendant, pled guilty to the same two counts, and was sentenced to 21 months' imprisonment and three years of supervised release. On appeal, Bacchus challenges his conviction and both defendants challenge aspects of their sentences.
 
 
 4
 The first issue we address concerns the admission during trial of certain evidence and argument relating to post-arrest statements made by Thompson. Specifically, at trial, the government called Thompson, who was given an order of immunity, to testify about his participation in the crimes. Thompson testified, inter alia, that he had received the stolen watches from a person identified only as "Tony." The government was then permitted to question Thompson about certain post-arrest statements he made to the police indicating that he had obtained the stolen watches from a person named "Trevor," and that he had also given "Trevor" the money he had obtained from the first batch of watches that he sold. On cross-examination, Thompson maintained that he had, in fact, received the stolen watches from "Tony"--not "Trevor"--and he denied that Trevor Bacchus was in any way involved in the theft of the cargo. Thompson also explained that the post-arrest statements he made inculpating Bacchus were the result of police coercion.
 
 
 5
 On appeal, Bacchus argues that it was error for the district court to allow the government to call Thompson as a witness where the government's sole purpose in doing so was to impeach Thompson's testimony through the introduction of the post-arrest statements that inculpated Bacchus. We find, however, that Bacchus has waived this argument on appeal. In United States v. Yu-Leung, 51 F.3d 1116 (2d Cir.1995), we explained:
 
 
 6
 If a party's failure to make an evidentiary exception is simply a matter of oversight, then such oversight qualifies as a correctable "forfeiture" for the purposes of plain error review. If, however, the party consciously refrains from objecting as a tactical matter, then the action constitutes a true "waiver," which will negate even plain error review.
 
 
 7
 Id. at 1121-22. Here, Bacchus was aware of the government's intention to call Thompson as a witness a full five days before the trial commenced. Bacchus should also have been aware, if not from information provided by the government pursuant to its 18 U.S.C. § 3500 disclosure obligations, then at the very least from the government's opening argument, that the government would rely on Thompson's post-arrest statements for impeachment purposes. Bacchus, however, failed to object to any of this, and for a sound strategic reason: although Thompson's post-arrest statement tended to inculpate Bacchus, Thompson's live testimony that "Tony," rather than "Trevor," committed the crimes, if believed, could well have resulted in Bacchus's acquittal. Accordingly, we find that Bacchus's failure to object was tactical, thus establishing a waiver barring even plain error review.
 
 
 8
 We note parenthetically that even were we inclined to review for plain error the district court's decision to allow the government to call Thompson as a witness, and then subsequently to impeach Thompson with his own post-arrest statements, we would affirm. Although it is "well established that 'impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible,' " United States v. Zackson, 12 F.3d 1178, 1184 (2d Cir.1993) (quoting United States v. Mortang, 531 F.2d 183, 190 (4th Cir.1975), it is also clear that the introduction of such statements is not "subterfuge" when the government calls a witness who, prior inconsistent statements notwithstanding, can testify about other aspects of the crime that are critical to the government's case. As we have explained, "[w]here the Government has called a witness whose corroborating testimony is instrumental to constructing the Government's case, the Government has the right to question the witness, and to attempt to impeach him, about those aspects of his testimony that conflict with the Government's account of the same events." See United States v. Eisen, 974 F.2d 246, 262-63 (2d Cir.1992). In the present case, we reject Bacchus's assertion that the government called Thompson as a witness solely to impeach his credibility through the introduction of Thompson's post-arrest statements largely on the ground that Thompson's testimony corroborated that of the government informant in several important respects. Accordingly, we find no error (much less plain error) in the district court's decision to allow the government to call Thompson as a witness, and then impeach him.
 
 
 9
 We also reject Bacchus's contention that he is entitled to a new trial on the ground that the district court erroneously admitted into evidence Thompson's post-arrest statements. First, we note that although the district court did not rely expressly on this ground, the statements were plainly impeachment material, and admissible as prior inconsistent statements pursuant to Fed.R.Evid. 613(b): the statements Thompson made to the police were certainly inconsistent with his testimony at trial; Thompson had an opportunity to deny or explain the inconsistent statements; and Bacchus was able to cross-examine Thompson about those statements extensively. See United States v. Strother, 49 F.3d 869, 874 (2d Cir.1995). Second, assuming, as the parties appear to, that Thompson's post-arrest statements were, in fact, offered for their truth and thus constitute hearsay, see Fed.R.Evid. 801(c), we find that the district court's conclusion that such statements contained sufficient indicia of trustworthiness, and thus were admissible pursuant to Fed.R.Evid. 803(24), was not an abuse of discretion. See United States v. Orena, 32 F.3d 704, 712 (2d Cir.1994).
 
 
 10
 Both defendants challenge the sentence imposed against them. Bacchus argues that the district court erred in directing that he be deported following his term of imprisonment. Although the decision to deport rests in the sound discretion of the United States Attorney General (and thus the district court exceeded its authority in directing Bacchus's deportation), we have previously held that such "orders" of deportation will merely be deemed to be recommendations to the Attorney General that deportation is appropriate. See United States v. Kassar, 47 F.3d 562, 568-69 (2d Cir.1995). We so construe the district court's order.
 
 
 11
 Thompson argues that the district court erred in relying on the manufacturer's suggested retail value of the stolen goods for the purposes of calculating loss pursuant to § 2B1.1 of the Sentencing Guidelines. We disagree, noting that "[w]e will not overturn a district court's application of the Guidelines to the facts of the case unless we find an abuse of discretion." United States v. Cropper, 42 F.3d 755, 758 (2d Cir.1994). Section 2B1.1 application note 1 provides: " 'Loss' means the value of property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue." United States Guidelines Manual § 2B1.1, comment. (n.2). " 'Loss' is, therefore, not the ultimate harm suffered by the victim, but is rather the value of the thing taken." United States v. Arjoon, 964 F.2d 167, 172 (2d Cir.1992). Given that Thompson functioned as a "retailer" by selling the stolen goods directly to customers, we cannot say that the district court's decision to rely on the retail, rather than wholesale, value of the watches was an abuse of discretion. See generally United States v. Watson, 966 F.2d 161, 163 (5th Cir.1992) (describing advantages to calculating loss with reference to retail, rather than wholesale, value of stolen goods); see also 18 U.S.C. § 641 ("The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.") (emphasis added).
 
 
 12
 We have carefully considered defendants' remaining arguments and we find them to be without merit. Accordingly, we affirm the judgments of conviction and sentence entered by the district court.
 
 
 
 *
 The Honorable Harlington Wood Jr. of the United States Court of Appeals for the Seventh Circuit, sitting by designation