21-2761-cr
*United States v. Borland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand twenty-three.

PRESENT: ROSEMARY S. POOLER,
BARRINGTON D. PARKER,
ALISON J. NATHAN,
*Circuit Judges.*

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                                          21-2761-cr

BRENT BORLAND,

*Defendant-Appellant.*

_____

For Defendant-Appellant:          KYLE SINGHAL (Shon Hopwood, *on the brief*), Hopwood & Singhal PLLC, Washington, DC.

For Appellee:                              NEGAR TEKEEI (Won S. Shin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from an order of the United States District Court for the Southern District of New York (Failla, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Defendant-Appellant Brent Borland pleaded guilty to securities fraud, wire fraud, and conspiracy to commit securities fraud and wire fraud. The district court sentenced Borland to seven years' imprisonment and three years of supervised release and ordered him to pay approximately $26.1 million in restitution, $26.5 million in forfeiture, and a $300 mandatory special assessment. Borland timely appealed, challenging the district court's calculation of his Guidelines sentence range. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision.

## I. Background

For years, Borland worked on large-scale real estate development projects in Belize. From at least 2014 through at least 2018, Borland and his business partner Marco Caruso solicited and received over $26 million from 41 investors. Borland and Caruso represented to the investors that they would use their money to develop an airport in Belize and that their investments were fully secured by unencumbered real property. Eventually, it came to light that Borland and Caruso had misappropriated approximately $7.5 million of investors' funds and made material misrepresentations. The property promised as collateral was improperly pledged to multiple investors and in some cases did not exist as described, though Borland claims the aggregate value of the collateral still exceeded the total amount of the investors' promissory notes. Based on this conduct, Borland pleaded guilty without a plea agreement to securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, wire fraud in violation of 18 U.S.C. § 1343, and conspiracy to commit

securities fraud and wire fraud in violation of 18 U.S.C. § 371.

Sentencing for federal fraud cases is governed by U.S.S.G. § 2B1.1, which calculates a defendant's offense level based in part on the amount of loss involved. At the time Borland's PSR was prepared, the Government had evidence that Borland received at least $21.9 million from investors in the Belize airport scheme, as well as at least $3.1 million from another group of investors in a previous allegedly fraudulent scheme. Based on this information, the Probation Office's offense level calculation included a 22-level enhancement under U.S.S.G. § 2B1.1(b)(1)(L) for loss amounts between $25 and $65 million. PSR ¶ 60. The Probation Office calculated a total Guidelines offense level of 34 and a Criminal History Category of I, resulting in a sentencing Guidelines range of 151 to 188 months' imprisonment. *Id.* ¶ 7.

Prior to sentencing, Borland objected to the PSR's loss calculation and corresponding application of the 22-level enhancement. U.S.S.G. § 2B1.1's Application Note 3(E)—known as the collateral exception—provides that "[i]n a case involving collateral pledged or otherwise provided by the defendant," "[l]oss shall be reduced by . . . the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." U.S.S.G. § 2B1.1 cmt. n.3(E). Invoking Note 3(E), Borland argued that the total collateral exceeded the total loss, and therefore the loss amount should be reduced to zero and "no enhancement for loss" should apply. App'x 61.

After receiving multiple sentencing submissions from the parties, the district court held a loss calculation hearing. Though the court agreed with some of Borland's legal arguments, it concluded that on the present record, there were too many factual uncertainties to apply the collateral exception. The property that Borland claimed could serve as collateral was the subject

3

of ongoing litigation in Belize contesting ownership; it was therefore unsettled whether Borland even had title to the property.[1] However, the district court stated it was "not going to foreclos[e] [the argument's] success." *Id.* at 276. It invited the parties to "look at this issue a little bit more" and encouraged defense counsel to take "another stab at this argument" by "return[ing] with additional information" or attempting to use different property as collateral. *Id.* at 276–77. The district court also expressed that the existence of collateral was "a very creditable argument" under the 18 U.S.C. § 3553(a) sentencing factors. *Id.*

Following this hearing, the parties reached a compromise regarding the loss calculation: the Government would no longer seek to include the $3.1 million loss from a previous scheme in the loss calculation, and in exchange, Borland would concede to a loss amount of $21.9 million. Because a loss amount under $25 million corresponds to a 20-level (rather than 22-level) enhancement, this calculation would lower Borland's Guidelines range to 121 to 151 months. *Id.* at 280–82. The Government subsequently learned of additional investors who had lost money in the Belize airport scheme, which would have increased the loss calculation to $26.1 million and resulted in a return to the 22-level enhancement. Nevertheless, standing by its agreement with Borland, the Government still asked the district court to adopt the lower Guidelines range. Borland's sentencing submissions also adhered to the parties' agreement and rather than continuing to press the collateral exception, he advocated for leniency under the § 3553(a) factors. Prior to sentencing, Borland consented to the entry of a restitution order of approximately $26.1 million and a forfeiture order of $26.5 million.

At sentencing, the district court adopted the original Guidelines calculation from the PSR,

---

[1] Following oral argument before this Court, Borland's counsel submitted a Rule 28(j) letter stating that it was "unable to make any representation as to the status of the litigation in Belize or as to the status of any encumbrances upon the collateral." ECF No. 96, at 1.

including the 22-level enhancement for the loss amount. However, it varied downward from the Guidelines range, principally sentencing Borland to 60 months' imprisonment on the conspiracy count and 84 months' imprisonment on each of the fraud counts, to run concurrently. The district court also ordered the agreed-to restitution and forfeiture. Borland now appeals, challenging the loss amount calculation and the restitution order.

## II. Discussion

We review restitution orders and the procedural reasonableness of a sentence for abuse of discretion. *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (procedural reasonableness); *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013) (restitution). Challenges to a sentence not raised in the district court are typically subject to plain error review. *See* Fed. R. Crim. P. 52(b). However, if a party consciously refrained from making an objection as a "tactical matter" during sentencing, then its failure to object constitutes not just forfeiture, but rather "a true waiver which will negate even plain error review." *United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007) (cleaned up). Further, "[a] finding of true waiver applies with even more force when . . . defendants not only failed to object to what they now describe as error, but they actively solicited it, in order to procure a perceived sentencing benefit"—in other words, "when defendants obtain precisely what they affirmatively sought." *Id.* (cleaned up).

The Government claims that Borland waived his challenge to the loss amount and restitution calculations. We agree. Over the course of the year leading up to the loss calculation hearing, the parties vigorously disputed the application of the collateral exception. At the hearing, when the district court invited the defense to take another shot at the argument, defense counsel "welcome[d] that opportunity." App'x 277. Evidently, the defense changed its mind. The parties agreed to a 20-level loss amount enhancement and Borland's subsequent sentencing

5

submissions confirmed that the enhancement was "not disputed." *Id.* at 291–92. The submissions made no reference to the collateral exception, except to describe what the defense had *previously* advocated for, and instead asked the district court for leniency under the sentencing factors—which is precisely the outcome that Borland received. Borland also consented to the restitution order prior to sentencing. And during sentencing, when the district court asked whether the parties had any additional objections to the PSR, Borland and his counsel both answered no.

The record indicates that these concessions were designed to "procure a perceived sentencing benefit." *Quinones*, 511 F.3d at 321. Though we have "not made a tactical benefit a prerequisite to identifying waiver," "an identifiable tactical benefit provides some evidence that the relinquishment of a right was intentional." *United States v. Spruill*, 808 F.3d 585, 599 (2d Cir. 2015). In return for conceding to a 20-level loss amount enhancement, the government agreed to stop seeking a loss amount enhancement based on Borland's conduct during the previous alleged scheme, which the PSR had included. In return for consenting to pay $26.1 million in restitution, Borland received the benefit of conveying acceptance of responsibility and "avoid[ing] any appearance of a false denial." *United States v. Broxmeyer*, 699 F.3d 265, 279 (2d Cir. 2012).

Borland counters that waiver never occurred because he challenged the loss amount based on the collateral exception, the district court rejected his challenge, and he took no affirmative steps thereafter to waive its appealability. All of these premises are flawed.

First, Borland's initial challenge to the loss amount does not simply neutralize his subsequent concession. *See, e.g.*, *United States v. Weiss*, 930 F.2d 185, 198 (2d Cir. 1991) (holding that because defense counsel initially objected to an evidentiary matter but then "withdrew his objection," the defendant "waived his right to appeal this matter"). If anything, the

6

fact that Borland initially objected and then gave up the objection through his agreement with the Government underscores that this was an intentional relinquishment, not a mere "oversight." *United States v. Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995). Borland's "trial lawyer did not simply fall asleep at the wheel." *Id.* at 1123.

Second, the district court was clear that it was still susceptible to being persuaded on the collateral exception, and Borland chose not to try to persuade the court. *Cf. Broxmeyer*, 699 F.3d at 278–79 (holding that a defendant would "not be heard on appeal to complain of the inadequacy of the court's factfinding" after declining the court's "invitation" to review factual rulings). To be sure, the district court's ruling may have influenced Borland to take the lower-risk path of compromising with the Government. Likewise, the district court's indication that it was open to considering the defense's argument under § 3553(a) may have convinced Borland that focusing on the sentencing factors was a more productive approach. But these considerations only reinforce that Borland made a "clear and conscious tactical decision." *Yu-Leung*, 51 F.3d at 1123.

Finally, we disagree with Borland that he took no affirmative steps to waive the collateral exception argument. The core of Borland's argument was that his Guidelines offense level should include "no enhancements for loss." App'x 61. That is fundamentally incompatible with his later stipulation to a Guidelines offense level that included a 20-level enhancement for loss.

We have considered Borland's remaining waiver arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7