24-923 (L)
*United States v. Garcia*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of May, two thousand twenty-five.

PRESENT:
> ROBERT D. SACK,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                          Nos. 24-923 (Lead),
>                                                   24-1468 (Con)

JONATHAN GARCIA, CHRISTOPHER NELSON,

> *Defendants-Appellants,*

MARK WOODS, CARMELO VELEZ,
CHRISTOPHER RODRIGUEZ, ANGEL LOPEZ,
CHRISTOPHER LUM, ALBERTO BORGES,
DEESHUNTEE STEVENS, DIEGO MATEO, LUIS

SEPULVEDA, EMMANUEL BONAFE, JOSIAH
VELAZQUEZ, JUAN HERNANDEZ, JESUS
HERNANDEZ, HEINNER SOLIS, EZEQUIEL
OSPINA, RAIMUNDO NIEVES, HECTOR
BONAPARTE, MICHAEL GONZALEZ, JUPANKY
PIMENTEL, WILLIAM GONZALEZ, RICARDO
RICUARTE, RAUL CUELLO, PAUL CUELLO,

   *Defendants.*\*

_____

FOR APPELLEE:

PATRICK R. MORONEY,
Assistant United States
Attorney (Adam S. Hobson,
David J. Robles, Stephanie
Simon, Assistant United States
Attorneys, *on the brief*), *for*
Danielle R. Sassoon, United
States Attorney for the
Southern District of New York,
New York, NY.

FOR DEFENDANT-APPELLANT GARCIA:

JOHN S. WALLENSTEIN, Law
Office of John S. Wallenstein,
Garden City, NY.

FOR DEFENDANT-APPELLANT NELSON:

STEPHANIE M. CARVLIN, Law
Office of Stephanie Carvlin,
New York, NY.

---

\* The Clerk's office is respectfully directed to amend the caption as reflected above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments entered on April 5, 2024, and May 15, 2024, are **AFFIRMED**.

Defendant-Appellant Jonathan Garcia appeals after a jury trial from a judgment of conviction of racketeering conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963; murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); and brandishing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Defendant-Appellant Christopher Nelson appeals from a judgment revoking his supervised release and sentencing him for violating the conditions of his supervised release. Because these appeals involve distinct challenges to unrelated judgments, we address each separately. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

## I.    Garcia

We consider in turn Garcia's arguments that the district court improperly admitted hearsay testimony, that the evidence was insufficient to support his murder in aid of racketeering conviction, and that venue was improper.

### A. Hearsay

Garcia argues that the district court impermissibly admitted as coconspirator statements out-of-court statements about the murder by declarants who were not part of a conspiracy to commit the charged murder. *See* Fed. R. Evid. 801(d)(2). Garcia does not identify the specific statements made by the five cooperating former fellow Latin Kings members he claims were admitted in error.

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard." *United States v. Kandic*, 134 F.4th 92, 99 (2d Cir. 2025).[1] A statement "made by the party's coconspirator during and in furtherance of the conspiracy" is not a hearsay statement. Fed. R. Evid. 801(d)(2)(E). "To admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

We generally review Garcia's challenge for plain error because he did not contemporaneously object to the vast majority of the contested statements at trial, even though the district court deferred to trial definitive rulings on the government's pretrial motions. *United States v. Simels*, 654 F.3d 161, 168 (2d Cir. 2011) ("[I]f a defendant fails to make a sufficient objection in the district court, the evidentiary claim is reviewed . . . under the plain error standard."); *cf. United States v. Yu-Leung*, 51 F.3d 1116, 1121 (2d Cir. 1995) (holding that a pretrial motion seeking to exclude evidence may preserve an objection where, among other things, it "is ruled upon without equivocation by the trial judge"). Plain error is shown when "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010).

To the extent that Garcia argues all after-the-fact, out-of-court statements about the murder made by fellow Latin Kings members who were not themselves involved in the murder are necessarily inadmissible, we reject his argument as overbroad. "[S]tatements relating past events meet the in-furtherance test if they serve some current purpose in the conspiracy, such as to promote cohesiveness." *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994). And Garcia has failed to identify for our review any specific statements he contends the district court admitted in error.

Moreover, even if Garcia had identified specific statements that were erroneously admitted under Federal Rule of Evidence 801(d)(2)(E), we see no plain error here. Three cooperating witnesses testified that Garcia admitted committing the murder; another former Latin King testified that he personally saw Garcia firing a gun into the crowd; a cooperating witness recorded Garcia's admission to the murder; the murder was captured on video; a store clerk who sold him gloves shortly before the murder testified that Garcia told him not to show the police the store's security camera footage; and Garcia's own social media posts alluded to the murder. Given the strength of the undisputedly admissible evidence before the jury, any (unidentified) hearsay statements admitted by the district court did

not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019).[2]

### B. Sufficiency of the Evidence

On the charge of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), the government had to prove:

> (1) that the [o]rganization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992). Garcia argues the government failed to prove that: (1) he committed the murder with the requisite state of mind and (2) he did so for the purpose of maintaining or increasing his position in the Latin Kings. We disagree.

---

[2] Garcia did object at trial to the admission of one out-of-court statement by a coconspirator offered by a former Latin Kings member who stated that, in response to the witness's desire to get a team to look for Garcia because he was not coming to meetings, a leader of the "Black Mob" tribe of the Latin Kings told him that Garcia had to "lay low key" because of the murder. Tr. 595–96. To the extent Garcia challenges the district court's admission of this statement, we conclude it was not error. The district court could readily conclude that the Black Mob leader made the statement for the purposes of promoting cohesiveness and furthering the goals of the Black Mob at a time when Garcia was a member of that tribe. *See United States v. Salerno*, 868 F.2d 524, 535–37 (2d Cir. 1989).

We must "sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021) (emphasis in original).

Because Garcia never challenged the sufficiency of the evidence on either of these grounds, we review for plain error. *United States v. Orelien*, 119 F.4th 217, 222 (2d Cir. 2024).

The evidence here was sufficient to establish that Garcia acted with intent or, at a minimum, acted recklessly with a "depraved indifference to human life," either of which could support the jury's verdict. *United States v. Garcia*, No. 19-cr-862, Dkt. 982 at 18. Garcia brought a gun to a meet-up with a rival tribe; purchased gloves shortly before the meeting, warning the store clerk not to share security footage; grabbed a gun from a confederate as the victim and others—none of whom were armed—fled; and, most significantly, shot the fleeing victim in the back.

From this evidence, a jury could find beyond a reasonable doubt that when Garcia grabbed the gun and started shooting directly at his fleeing rivals, he

intended to "cause the death of another person." N.Y. Penal Law § 125.25. And it could conclude that he "recklessly engage[d] in conduct which create[d] a grave risk of death to another person." *Id.*; *see also People v. Suarez*, 6 N.Y.3d 202, 214 (2005) (describing "firing into a crowd" as a "[q]uintessential example[]" of depraved indifference).

Likewise, the jury could infer that Garcia committed his violent crime in furtherance of his membership in the criminal enterprise. *Concepcion*, 983 F.2d at 381. This motive does not need to be "the defendant's sole or principal motive." *Id.* Taken in the light most favorable to the government, the evidence showed that Garcia shot at members of a rival tribe in part to prevent being stripped of his Latin Kings status—in other words, to maintain his position in the Latin Kings. The jury heard additional evidence that the murder increased Garcia's reputation within the Latin Kings and was part of why he was welcomed into the Black Mob tribe of the gang. And the jury could infer that Garcia knew the murder benefited his reputation, which is why he bragged about it on social media.

### C. Venue

Venue is proper in the district in which the crime was committed, and the government has the burden of proving proper venue by a preponderance of the

evidence. *See United States v. Chow*, 993 F.3d 125, 143 (2d Cir. 2021). Because the facts underlying venue are not in dispute, this venue challenge raises a question of law, which we review without deference to the district court's reasoning. *United States v. Thompson*, 896 F.3d 155, 171 (2d Cir. 2018).

Murder in aid of racketeering is a continuing offense, so venue is proper both where the violent crime occurred and where the relevant racketeering activities occurred. *See United States v. Saavedra*, 223 F.3d 85, 91–92 (2d Cir. 2000) ("The racketeering element . . . is not a mere 'circumstance' of the [violent crimes in aid of racketeering activity] offense—it is an essential element of that crime[] . . . because the assault was attempted *in furtherance* of their position within that racketeering enterprise." (emphasis in original)).

Garcia does not dispute that racketeering activities occurred in the Southern District of New York. And the record reflects that the Latin Kings held meetings and conducted racketeering activities in Manhattan and the Bronx. Moreover, the Black Mob—which allowed Garcia to join partially based on his enhanced reputation due to the murder—operated primarily in the Bronx. For the reasons set forth in *Saavedra*, that's sufficient to support venue in the Southern District for

10

the murder in aid of racketeering charge, even if the murder itself occurred in the Eastern District.

## II.    Nelson

Nelson pled guilty to racketeering conspiracy; narcotics conspiracy; and possessing, brandishing, and discharging a firearm in furtherance of a drug trafficking crime.  On September 21, 2023, the district court sentenced him to three concurrent sentences of time served plus a five-year term of supervised release. On September 30, a matter of days after his release from prison, the Suffolk County Police Department found the body of a man who appeared to have died from an overdose.   The decedent's cell phone included text messages with Nelson apparently reflecting that Nelson was arranging to sell him heroin.  Using the decedent's phone, an undercover officer arranged to buy heroin from Nelson. Nelson sold an undercover officer fentanyl-laced heroin on October 2 and 4.

On October 19, 2023, the Probation Office petitioned the court to issue a warrant, detailing multiple violations relating to selling narcotics and for failing to report to the Probation Office.  Nelson admitted to one violation of selling narcotics to an undercover officer and the district court sentenced him to five years of incarceration, to be served consecutive to any state court sentence.  On appeal,

he challenges the court's sentence for his violation of his supervised release terms on the bases that his counsel was ineffective and the district court improperly focused on the seriousness of his conduct rather than the breach of the court's trust reflected by his violation.

### A. Ineffective Assistance of Counsel

Nelson argues his trial counsel was ineffective because, in his sentencing arguments, counsel improperly emphasized that he was personally angered and disappointed by Nelson's violations of supervised release. According to Nelson, his lawyer's statements deprived him of his Sixth Amendment right to counsel and constituted structural error.

Ordinarily, we would decline to hear an ineffective assistance of counsel claim raised on direct appeal, allowing it to be raised under 28 U.S.C. § 2255. *United States v. Adams*, 768 F.3d 219, 226 (2d Cir. 2014); *see also Massaro v. United States*, 538 U.S. 500, 504–05 ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance. When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record . . . often incomplete or inadequate for this purpose."). However, because Nelson's argument is that counsel's statements on

their face deprived Nelson of his Sixth Amendment rights, this is the rare case in which we exercise our discretion to address the ineffective assistance of counsel claim on direct appeal.

To establish a claim for ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). However, "certain errors are deemed structural and require reversal because they cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a fair and open judicial process." *Weaver v. Massachusetts*, 582 U.S. 286, 301 (2017).

Nelson fails at the first *Strickland* prong. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Here, we cannot conclude as a matter of law that counsel's conduct was unreasonable. Given the severity of Nelson's

breach of the court's trust, counsel could reasonably have made a strategic decision to expressly acknowledge and share the judge's disappointment with Nelson's conduct and then model for the court his own process of moving beyond that reaction to a more considered recognition of the factors that led to Nelson's conduct.

### B. Procedural Reasonableness

We review the procedural reasonableness of a sentence imposed for a violation of supervised release "under a deferential abuse-of-discretion standard." *United States v. Degroate*, 940 F.3d 167, 174 (2d Cir. 2019). "A district court commits procedural error where it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [relevant statutory] factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *Id.* Because Nelson did not object below, we review for plain error. *Id.*[3]

---

[3] Nelson invokes caselaw establishing that we sometimes apply a "relaxed" form of plain error review to sentencing errors "because the cost of correcting an unpreserved error is not as great as in the trial context." *United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020). The government argues this is not the kind of case in which we have applied such a relaxed standard. *See United States v. Matta*, 777 F.3d 116, 121–22 (2d Cir. 2015). Because we would reach the same result under either standard, we need not decide whether "relaxed" plain error review applies.

Nelson argues that the district court procedurally erred when it punished him based primarily on the severity of his conduct rather than his breach of the court's trust. "[A] sentence for a violation of supervised release should primarily sanction the defendant's breach of trust, not the conduct constituting the violation itself." *United States v. Ramos*, 979 F.3d 994, 1002 (2d Cir. 2020). The provision governing the revocation of a term of supervised release—18 U.S.C. § 3583(e)— instructs the district court to "consider[]" certain sections of § 3553(a), including § 3553(a)(1), addressing "the nature and circumstances of the offense," but not § 3553(a)(2)(A), which deals with the "seriousness of the offense." Therefore, Nelson argues, the district court committed procedural error by saying: "In terms of what is most important, we start with the nature and seriousness of the violation." App'x 185.

Viewing the record as a whole, however, the court did emphasize Nelson's breach of trust, characterizing it as "substantial," *id.* at 187, and describing the court's disappointment that Nelson had squandered the opportunity the court had extended to him in his underlying sentence.

Moreover, our caselaw and the Sentencing Guidelines do not prohibit a judge from considering the seriousness of a violation. *See* U.S.S.G. Ch. 7, Part A,

¶ 3(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."); *United States v. Williams*, 443 F.3d 35, 48 (2d Cir. 2006) ("[T]he court in sentencing a defendant for violation of supervised release may properly consider the seriousness of his offense.").

The district court here did not consider solely the seriousness of Nelson's offense; it also considered Nelson's breach of trust, how soon after his release he committed the violation, and the need for adequate deterrence and incapacitation. On this record, we cannot conclude the district court committed a plain error—even under a "relaxed" standard—when it imposed its sentence.

* * *

For the above reasons, the district court's judgments are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16