UNITED STATES of America,
Appellee,

v.

Jimmy JACKSON, Defendant–Appellant.

Docket No. 01–1081.

United States Court of Appeals,
Second Circuit.

Nov. 14, 2001.

Frank Policelli, Esq., Utica, NY, for appellant.

Linda F. Thorne, Department of Justice, Washington, DC, for appellee.

Present POOLER and KATZMANN, Circuit Judges.*

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Jimmy Jackson appeals from a judgment of the district court, entered after a jury trial, that convicted him of conspiracy to commit arson. A federal grand jury charged Jackson, Joseph Brown, and Henry Savage with conspiracy to commit arson, arson, and the use of fire to commit an offense prosecutable as a felony. As one overt act among others, the grand jury charged that

[o]n or about October 20, 1997, at the Believers Miracle Deliverance Church ["Believers"], defendants **Henry Savage** and **Joseph Brown a/k/a Joseph Love** poured gasoline throughout portions of the interior of the church and ignited the gasoline while Defendant **Jimmy Jackson** remained outside of the church and served as a lookout.

Prior to trial, the court granted the government's motion to dismiss its charges against Savage without prejudice.

At trial, Roger Perkins testified that on October 19, 1997, he had dinner with Bishop Ashley, the pastor of a church where Believers' pastor, Willie Steele, formerly had worked. Ashley told Perkins that the people at Believers were "wicked and that they were lesbians." After dinner, Ashley instructed Perkins to drive by the church and stop in front of it. While the two were in front of the church, Ashley told Perkins that it would be easy for him to get in through either the front or back doors. Around 11:00 that night, Perkins, encountered Savage outside Believers. Savage previously had told Perkins that he did not like Steele and was going to burn her church down. In front of the church, Savage indicated that he had spoken to Ashley and said, "you know what we have to do tonight." He also directed Perkins to get a gas container and meet him at a local convenience store. At the convenience

---

* The Honorable David N. Hurd of the United States District Court for the Northern District of New York was originally assigned as a member of the panel, but recused himself prior to oral argument and did not participate in deciding the appeal. The appeal is being determined by the remaining members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(b); *Murray v. National Broad. Co.,* 35 F.3d 45, 46 (2d Cir.1994).

store, Savage waited outside while Perkins paid for and pumped the gas into the container he had brought. The two then drove to the church where they found Brown and Jackson. Jackson remained in a parked van, and Savage, Brown, and Perkins went into the church. Perkins left before the other two actually finished setting the fire, but when he reached his car, he heard "a swishing noise" as the church ignited. Jackson was still outside the church in his van at this point. Perkins acknowledged that he did not know why Jackson was outside the church and had no conversations with Jackson concerning the fire.

Denise Savage, Henry Savage's wife, testified that on the night of October 19, she and her husband stopped at Jackson's house, and Jackson told her that he did not like Steele because she had said he was a homosexual.

Two witnesses testified that Jackson had admitted participation in the arson. An inmate who was in custody with Jackson in November 1997 said that Jackson told her that "me and my man torched" the church. A corrections officer testified that he overheard the conversation between Jackson and the other inmate and reported it to his sergeant. According to the corrections officer, Jackson said that he started the fire and then stood around to watch it burn.

The jury convicted Jackson on the conspiracy count but acquitted him on the substantive arson count and on the count charging that he used fire in the course of committing a felony. The jury also found that Jackson acted as a lookout during the arson.

On appeal Jackson principally argues that there was insufficient proof to support his conviction for conspiracy and that an alleged variance between the conspiracy charged in the indictment and the proof at trial denied him a fair trial.

In order to prove a conspiracy, "the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (quoting *United States v. Maldonado–Rivera*, 922 F.2d 934, 963 (2d Cir. 1990)). Jackson first argues that there was insufficient proof that he agreed to participate in a collective venture. In assessing this challenge, we will set aside the jury's verdict only if "no rational trier of fact could have found [agreement] beyond a reasonable doubt." *Id.* (internal quotation marks and citations omitted). Whether the government's evidence is direct or circumstantial, we view it in the light most favorable to the government and draw any permissible inferences in favor of the government. *Id.* at 136–37. The government's proof was more than sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that Jackson agreed to participate in a conspiracy to commit arson. First, on the night of the fire, Jackson met with co-conspirator Henry Savage and his wife and told the wife that he did not like Steele. Second, he was present at the scene of the crime. Finally, two witnesses testified that he admitted to his participation.

Because the corrections officer testified that Jackson said he actually went inside and started the fire while Perkins testified that Jackson stayed outside, Jackson argues that the jury also heard insufficient evidence to establish that he acted as a lookout. This argument fails because the jury could have credited that portion of Jackson's admission that implicated him in the arson but viewed his implied claim of direct participation in setting the fire as braggadocio.

Jackson's claim that the proof against him varied from the indictment restates

his argument that the proof of agreement was insufficient. For the reasons previously stated, we reject that argument.