17-800
United States v. Johnny Cedeño

 UNITED STATES COURT OF APPEALS
 FOR THE SECOND CIRCUIT

 SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed
on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate
Procedure 32.1 and this court’s Local Rule 32.1.1. When citing a summary order in a
document filed with this court, a party must cite either the Federal Appendix or an electronic
database (with the notation “summary order”). A party citing a summary order must serve
a copy of it on any party not represented by counsel.

 At a stated Term of the United States Court of Appeals for the Second Circuit, held at the
Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on
the 14th day of November, two thousand eighteen.

Present: ROBERT A. KATZMANN,
 Chief Judge,
 DENNY CHIN,
 Circuit Judge,
 JEFFREY A. MEYER,
 District Judge.*
________________________________________________

UNITED STATES OF AMERICA,

 Appellee,

 v. No. 17-800

JOHNNY CEDEÑO,

 Defendant-Appellant,

ANTONIO GUERRERO, also known as Tony, EDWIN
MALDONADO, OMAR FLORES,

 Defendants.
____________________________________________

 *
 Jeffrey A. Meyer, of the United States District Court for the District of Connecticut,
sitting by designation.
For Appellee: Laurie A. Korenbaum and Karl Metzner, Assistant United
 States Attorneys, for Geoffrey S. Berman, United States
 Attorney for the Southern District of New York, New
 York, NY.

For Defendant-Appellant: Steven G. Brill, Sullivan & Brill, LLP, New York, NY.
.

 Appeal from a judgment of conviction of the United States District Court for the

Southern District of New York (Sweet, J.).

 UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED that the judgment of the district court is AFFIRMED.

 Defendant Johnny Cedeño appeals from a judgment of the United States District Court

for the Southern District of New York (Sweet, J.) entered March 9, 2017, convicting Cedeño of

conspiracy to commit murder-for-hire, the substantive crime of murder-for-hire, and intentional

murder in connection with a conspiracy to distribute narcotics. We assume the parties’

familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

 At trial, the government introduced evidence that Cedeño dealt crack cocaine from a

location on Bathgate Avenue in the Bronx (the “Bathgate Spot”) in the 1990s. Around the same

time, Ramon Flores and his brothers, Omar and Leonardo, ran a crack cocaine distribution

organization called “Solid Gold” on Boston Road (the “Boston Road Spot”). Ramon and Cedeño

became friends. However, Cedeño was far less friendly with Genero Rodriguez, a/k/a “Jay,” who

sold heroin on the same block where Cedeño sold crack. Cedeño was shot several times on

Bathgate Avenue and believed that Jay had ordered the shooting so that he could take over the

Bathgate Spot for himself. Cedeño therefore recruited a crew of “murderers” to kill Jay (the

“Gerard Avenue Crew”), which made three unsuccessful attempts on Jay’s life.

 2
 After these three failed attempts, Cedeño was incarcerated as a result of an unrelated

incident. While Cedeño was incarcerated, Ramon Flores and other members of Solid Gold ran

the Bathgate Spot for him. Cedeño loaned Ramon Flores $10,000 to purchase cocaine to supply

the Boston Road and Bathgate Spots. Cedeño later instructed Ramon to use part of that $10,000

to pay Edwin Maldonado, a member of Solid Gold, to kill Jay. Solid Gold members visited

Cedeño in prison and discussed and planned the murder. Maldonado received an initial payment

for the murder, and on December 13, 1994, he shot both Jay and a bystander, sixteen-year-old

Carmen Diaz. Jay survived the shooting, but Diaz died on January 1, 1995.

 Cedeño makes two arguments on appeal. First, he contends that there was insufficient

evidence to support his convictions. We disagree. “A defendant challenging the sufficiency of

the evidence bears a heavy burden.” United States v. Kozeny, 667 F.3d 122, 139 (2d Cir. 2011).1

A jury verdict must be upheld if “any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.” United States v. Persico, 645 F.3d 85, 105

(2d Cir. 2011). In considering the sufficiency of the evidence supporting a guilty verdict, the

evidence must be viewed in the light most favorable to the government. See United States v.

Temple, 447 F.3d 130, 136-37 (2d Cir. 2006).

 Cedeño argues that there was insufficient evidence to support his convictions on the

murder-for-hire counts because the only evidence that Cedeño paid for Jay’s murder was the

“inherently unreliable” testimony of Ramon Flores. However, “[i]n order to avoid usurping the

role of the jury, courts must defer to the jury’s assessment of witness credibility and the jury’s

resolution of conflicting testimony when reviewing the sufficiency of the evidence.” United

States v. Triumph Capital Grp., Inc., 544 F.3d 149, 158-59 (2d Cir. 2008). Moreover, we have

1
 Unless otherwise indicated, case quotations omit all internal quotation marks, citations,
alterations, and footnotes.

 3
“recognized that a conviction may be sustained on the basis of the testimony of a single

accomplice, so long as that testimony is not incredible on its face and is capable of establishing

guilt beyond a reasonable doubt.” United States v. Diaz, 176 F.3d 52, 92 (2d Cir. 1999). Ramon

testified that Cedeño had loaned him $10,000 and then directed him to use a portion of that loan

to pay Maldonado for the murder. Cedeño offers no colorable argument that Ramon’s testimony

is incredible on its face or incapable of establishing guilt beyond a reasonable doubt. In addition,

Ramon Flores’ testimony was corroborated by two other witnesses, Marisol Rivas and Omar

Flores.

 Cedeño challenges his conviction for murder in connection with a drug conspiracy on the

ground that the evidence showed that Cedeño’s desire for Jay to be killed was based only on a

personal vendetta. “[T]he government need only prove beyond a reasonable doubt that one

motive for the killing (or conspiracy to kill) was related to the drug conspiracy.” United States v.

Desinor, 525 F.3d 193, 202 (2d Cir. 2008). Bearing in mind that “the task of choosing among

competing, permissible inferences is for the [jury], not for the reviewing court,” United States v.

McDermott, 245 F.3d 133, 137 (2d Cir. 2001), there was sufficient evidence from which a

reasonable juror could conclude that Jay and Cedeño’s dispute originated in their competition

over the Bathgate Spot, and so the murder was motivated at least in part by the drug conspiracy.

 Cedeño next argues that the district court erroneously admitted (1) a hearsay statement of

Jay Rodriguez as a statement against interest, (2) Cedeño’s prior bad acts as direct evidence, and

(3) a number of other hearsay (and hearsay within hearsay) statements as statements of co-

conspirators. As Cedeño admits, only the first of these objections was preserved. We review a

district court’s preserved evidentiary rulings for an abuse of discretion. United States v. Samet,

 4
466 F.3d 251, 254 (2d Cir. 2006). We review a district court’s unpreserved evidentiary rulings

for plain error. United States v. Boyland, 862 F.3d 279, 288-89 (2d Cir. 2017).

 First, the district court did not abuse its discretion in admitting Calvin Cole’s testimony

that, on a bus from Rikers Island, Jay told him, “Johnny is the one that did this [i.e. killed Diaz]

and whenever I see him, I am going to kill him.” App. 479-80. A hearsay statement is admissible

if it is so against the declarant’s penal interest that a reasonable person in the declarant’s position

would not have made the statement unless he believed it to be true, and corroborating

circumstances clearly indicate the trustworthiness of the statement. See Fed. R. Evid. 804(b)(3).

Cedeño does not contest that the second half of the statement – “whenever I see him, I am going

to kill him” – was against Jay’s penal interest. He argues only that the first portion of the

statement – “Johnny is the one that did this” – is not, and therefore should not have been

admitted. However, a statement that, taken as a whole, incriminates both the declarant and the

defendant may be entirely admitted if it was made to someone the declarant believed to be an

ally and there is no reason to believe that the portion of the statement that inculpates the

defendant is any less reliable than the part that incriminates the declarant. See United States v.

Sasso, 59 F.3d 341, 349 (2d Cir. 1995). Such is the case here. Jay’s statement on the bus was not

made under coercive circumstances, see United States v. Mathews, 20 F.3d 538, 546 (2d Cir.

1994), or to shift blame or curry favor with authorities, see Williamson v. United States, 512 U.S.

599, 603 (1994). Furthermore, the evidence at trial corroborated both portions of the statement

fully. See United States v. Wexler, 522 F.3d 194, 202-03 (2d Cir. 2008).

 Second, it was not plain error for the district court to admit evidence of Cedeño’s prior

bad acts. Evidence of uncharged criminal activity can be admitted as direct evidence under Rule

403 “if it arose out of the same transaction or series of transactions as the charged offense, if it

 5
inextricably intertwined with evidence regarding the charged offense, or if it is necessary to

complete the story of the crime on trial.” United States v. Carboni, 204 F.3d 39, 44 (2d Cir.

2000). Here, the prior bad acts were: (1) a shooting committed by Cedeño on March 22, 1993 at

the Bathgate Spot; (2) a shooting committed by Cedeño on July 22, 1994 in the vicinity of the

Bathgate Spot and the fact that Cedeño had been arrested for that crime, pled guilty to possessing

a gun on that occasion, and was thereafter incarcerated; (3) three prior attempts on Jay’s life that

were orchestrated and planned by Cedeño; and (4) Cedeño’s history of drug dealing with Solid

Gold. Cedeño’s history of drug dealing with Solid Gold and prior attempts to have Jay killed

both were “inextricably intertwined with evidence regarding the charged offense” and “necessary

to complete the story of the crime on trial.” Whether the two shootings unrelated to Jay’s murder

were properly admitted as direct evidence is a closer question, but the district court’s ruling was

not plain error because both shootings were evidence of Cedeño’s participation in a drug

conspiracy on Bathgate Avenue. Cedeño’s participation in that conspiracy supports a finding that

Diaz’s murder was related to a drug conspiracy.

 Third, the district court did not err by admitting certain out-of-court statements as

statements of co-conspirators without making individual, explicit determinations as to whether a

conspiracy that included the defendant and the declarant existed and whether the statement was

made in furtherance of that conspiracy. This was not an error because Cedeño did not object to

this testimony at trial. Regardless, each of the statements that he identifies was properly admitted

as a co-conspirator statement under Federal Rule of Evidence 801(d)(2)(E). For example,

Cedeño argues that Ramon Flores’ testimony about what Raffi, a member of the Gerard Avenue

Crew, said to him, should not have been admitted because Ramon was not a member of that

particular murder conspiracy. But there was ample evidence that he was. Ramon participated in

 6
several conversations with Cedeño and the Gerard Avenue Crew about killing Jay, and he

provided a car for one of the attempted murders and a gun for two of the attempts. The district

court also did not err in admitting the “hearsay within hearsay” statements identified by Cedeño.

For example, Cedeño argues that Omar Flores testified that Ramon Flores told him that Cedeño

“said that he wanted [Edwin] to be the one to kill Jay. He liked the way that Edwin did it.” App.

549. But both Cedeño’s statement to Ramon and Ramon’s statement to Omar were admissible as

co-conspirator statements, made in furtherance of the conspiracy to kill Jay.

 We have considered all of Cedeño’s remaining contentions and have found in them no

basis for reversal. For the reasons stated herein, the judgment of the district court is

AFFIRMED.

 FOR THE COURT:
 CATHERINE O’HAGAN WOLFE, CLERK

 7