18-395-cr
*United States v. Asch*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand nineteen.

PRESENT:    DENNY CHIN,
            SUSAN L. CARNEY,
                    *Circuit Judges*,
            BRENDA K. SANNES,
                    *District Judge.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee*,

            v.                                        18-395-cr

ROBERT CHRISTOPHER ASCH, AKA Chris,
                    *Defendant-Appellant*,

GILBERTO VALLE, AKA Sealed Defendant 1,
MICHAEL VANHISE, AKA Sealed Defendant 1,

---

[*]    Judge Brenda K. Sannes, of the United States District Court for the Northern District of New York, sitting by designation.

RICHARD MELTZ, AKA Rick,

                              *Defendants.*[†]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                      WON S. SHIN, Assistant United States
                                   Attorney (Hadassa Waxman, Karl Metzner,
                                   Assistant United States Attorneys, *on the brief*),
                                   *for* Geoffrey S. Berman, United States Attorney
                                   for the Southern District of New York, New
                                   York, New York.

FOR DEFENDANT-APPELLANT:           BRIAN LANCIAULT, JR. (Brian D. Waller, *on
                                   the brief*), Thompson Hine LLP, New York,
                                   New York.

Appeal from the United States District Court for the Southern District of

New York (Gardephe, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Robert Christopher Asch appeals from a judgment

entered February 1, 2018, following a jury trial, convicting him of violating 18 U.S.C.

§ 1201(c) by conspiring to kidnap members of a co-defendant's family and an individual

who turned out to be an undercover law enforcement agent.  In a 92-page decision

entered August 8, 2017, the district court carefully reviewed the evidence presented at

trial and denied Asch's (and co-defendant Michael Van Hise's) motions for a judgment

of acquittal or a new trial.  On January 29, 2018, Asch was sentenced principally to

---

[†]        The Clerk of the Court is directed to amend the caption to conform to the above.

- 2 -

15 years' imprisonment.  On appeal, Asch challenges the sufficiency of the evidence and the reasonableness of his sentence.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## DISCUSSION

**I.      Sufficiency of the Evidence**

Asch challenges the sufficiency of the evidence both as to the conspiracy to kidnap members of Van Hise's family (Count One) and the conspiracy to kidnap an undercover law enforcement agent (Count Two).

This Court reviews a sufficiency of the evidence challenge *de novo*, "but defendants face a heavy burden, as the standard of review is exceedingly deferential." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (internal quotation marks omitted).  The evidence must be viewed in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility.  *See id.*; *see also United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) ("[I]n a conspiracy case, deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." (internal quotation marks omitted)).  "A judgment of acquittal can be entered 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager' that no 'rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'" *United States v. Taylor*, 816 F.3d 12, 22 (2d Cir. 2016) (quoting *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004)).

### A. Conspiracy to Kidnap Van Hise Family Members

The jury found Asch guilty of conspiring with Van Hise and Richard Meltz to kidnap one or more members of Van Hise's family, specifically Van Hise's wife, his sister-in-law, or one or more of the latter's four minor children. Asch argues that the evidence was insufficient to show a genuine agreement or criminal intent. We are not persuaded.

First, Asch argues there was insufficient evidence for the jury to find a genuine agreement because the evidence showed only that the discussions were inconclusive, noncommittal, and hypothetical and that any plan lacked the required specificity. This argument is unpersuasive as the government presented evidence of email conversations, phone conversations, and in-person meetings among Asch, Meltz, and Van Hise in which they devised a plan to kidnap Van Hise's family members and prepared to do so. For example, the government presented evidence that Asch met with Van Hise in the town where Van Hise lives in 2012 and Van Hise showed Asch where they could dump a body. Shortly after their in-person meeting, Asch and Van Hise began discussing kidnapping Van Hise's family, and Van Hise asked Meltz to help. In preparation, Van Hise shared pictures of his family members, as well as their

- 4 -

location, and the group discussed plans for how to kidnap members of the Van Hise family without getting caught.

Although these co-defendants at times expressed concerns and reservations, they also reassured one another that the plan could be carried out. For example, after Van Hise expressed doubt, Asch reassured him that it was "possible" and "could happen if the circumstances are right." App'x at 508. Moreover, while some details such as time and location were not finalized, the "essential nature of the plan" to kidnap and murder one or more members of the Van Hise family was agreed upon. *See United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) ("The coconspirators need not have agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan." (internal quotation marks omitted)); *cf. United States v. Mulder*, 273 F.3d 91, 115 (2d Cir. 2001) (finding sufficient evidence for Hobbs Act conspiracy conviction even though the verdict did not identify defendant's victims because target's identity is not an element of a Hobbs Act conspiracy). Thus, a reasonable jury could have found that Asch, Van Hise, and Meltz conspired to kidnap one or more members of the Van Hise family.

Second, Asch's argument that he had no criminal intent because the evidence shows he was equivocal and merely engaging in fantasy is unpersuasive. From the evidence presented, a reasonable jury could have found that Asch intended to commit a kidnapping. For example, Asch had phone conversations with Meltz about

the planned kidnapping, travelled across state lines to meet Van Hise and look at possible locations to dump a body, and conducted research over the Internet on how to "make sleeping powder," how to "make sleeping gas," where to purchase chloroform, and "what pressure points will cause someone to go unconscious the fastest." App'x at 345; *see United States v. Valle*, 807 F.3d 508, 519 (2d Cir. 2015) ("Internet searches can provide some relevant proof of intent.").

Asch argues that this case is like *Valle*, where we held -- as did the district court -- that there was insufficient evidence to show that the defendant had the requisite criminal intent and was not just fantasizing about committing a crime. *See id.* at 516-23. In *Valle*, however, the conspiracy was "entirely virtual [in] nature" and the defendant made no "effort to communicate by telephone, text message, or web camera, much less meet in person," with his coconspirators. *Id.* at 517. Indeed in *Valle*, the defendant "formed no real life relationship" with his coconspirators, "did not know their real names," and "could not be sure of their genders, ages, or locations." *Id.* By contrast, Asch, Van Hise, and Meltz, had email conversations, phone conversations, and in-person meetings, and their conversations were not "rife with indicia of fantasy." *Id.* at 523. In fact, Asch, Van Hise, and Meltz used their real names and shared personal information about their lives. Van Hise also sent Asch and Meltz pictures of his family members, used their real names and ages, and shared their real location. Accordingly, there was sufficient evidence for a jury to convict Asch on Count One.

B.     **Conspiracy to Kidnap an Undercover Agent**

The jury found Asch guilty of conspiring with Meltz to kidnap an individual who unbeknownst to them was an undercover agent. Asch argues that the evidence was insufficient to show a genuine agreement and intent to kidnap the undercover agent. We are not persuaded. The government presented evidence that Asch discussed kidnapping and murdering women with another undercover agent ("Darren") beginning in January 2013, and the two began focusing on kidnapping the undercover agent (a woman). In February 2013, Asch and Meltz spoke on the phone about kidnapping the undercover agent. Asch then introduced Darren to Meltz so that Meltz could help, and Meltz and Darren talked at least eight times after they were introduced to discuss this kidnapping. Asch also told Darren that he and Meltz were "comfortable going to the next level." App'x at 565.

Asch argues there was no agreement because Meltz declined to be present at the kidnapping and Meltz did not believe that Asch actually intended to kidnap the undercover agent. We reject that argument. First, Meltz did not need to be present to further the conspiracy because "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63 (1997). It was sufficient that Meltz used his law enforcement background to advise Asch on how to commit the kidnapping, including advice on how and where to buy a stun gun, and devised a plan with Asch on how to

- 7 -

kidnap the undercover agent.  Second, Asch's argument that Meltz did not believe Asch intended to commit the kidnapping is based on Meltz's April 14, 2013 meeting with Darren.  The parties disagreed whether Meltz told Darren at that meeting that "[Asch] would," App'x at 570, or "[Asch] wouldn't," App'x at 490, go through with the kidnapping.  The jury was given a copy of both transcripts and heard the recording at least eight times.  The jury, therefore, was allowed to interpret the recordings as Meltz telling Darren that Asch would commit the kidnapping -- that is, that Meltz believed Asch actually intended to commit the kidnapping.

Lastly, the government presented sufficient evidence of Asch's intent to kidnap the undercover agent.  For instance, the government presented evidence that Asch refused to work with individuals who expressed uncertainty as to committing the kidnapping, Meltz said Asch was serious about the plan to kidnap the undercover agent, Asch bought a stun gun from a Pennsylvania gun show as well as other items he believed were necessary to commit the kidnapping, and Asch conducted surveillance on the undercover agent.  Accordingly, there was sufficient evidence to convict Asch on Count Two.

## II.    Reasonableness of the Sentence

Asch argues that his sentence was unreasonable because it was "greater than necessary" and "contradicts factual matters established at trial."  Appellant's Br. at 57-58.  We review a sentence for substantive reasonableness under a deferential abuse-

of-discretion standard. *United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014). A sentence is substantively unreasonable only where it is so "shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing [it] to stand would damage the administration of justice." *Id.* (internal quotation marks omitted). We therefore will "set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Asch had a total offense level of 43 and a criminal history category of I, and his United States Sentencing Guidelines Manual range was life imprisonment. The district court considered the nature and circumstances of Asch's offenses, as well as Asch's personal history and characteristics, before sentencing him principally to 15 years' imprisonment. This was within the range of permissible decisions, and therefore the court did not abuse its discretion.

\* \* \*

We have considered Asch's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk