*United States v. Bayfield*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of December, two thousand nineteen.

Present:
> PIERRE N. LEVAL,
> RICHARD C. WESLEY,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

       *Appellee*,

    v.                             18-3765-cr

JAMES BAYFIELD,

       *Defendant-Appellant*.<sup>*</sup>

_____

| | |
|---|---|
| For Appellee: | DAVID PITLUCK, Assistant United States Attorney (Kevin Trowel, Mark E. Bini, Michael Keilty, Assistant United States Attorneys, *on the brief*), *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY |
| For Defendant-Appellant: | JEREMY GUTMAN, New York, NY |

---

<sup>*</sup> The Clerk is respectfully requested to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Vitaliano, *J*.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **REMANDED** for proceedings consistent with this order.

Defendant-Appellant James Bayfield ("Bayfield") appeals from a December 19, 2018 judgment and sentence of 21 months incarceration followed by three years of supervised release, in the United States District Court for the Eastern District of New York (Vitaliano, *J*.) following a conviction after jury trial for one count of conspiracy to commit bank fraud and wire fraud in violation of 18 U.S.C. §§ 1343, 1344, 1349 and three counts of bank fraud in violation of 18 U.S.C. § 1344. Bayfield's conviction arose from his participation in a scheme to obtain mortgages on favorable terms by submitting false documentation to the issuing banks. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*      \*      \*

**I. The False Deed**

In December 2012, four years after the completion of one of the fraudulent real-estate transactions underpinning Bayfield's conviction, Bayfield forged a deed (the "False Deed") purporting to transfer one of the properties at issue ("the Property") from the transaction's straw buyer to himself, backdating the deed to the month after the transaction took place. At trial, the government introduced evidence of this False Deed to show Bayfield's knowledge that the straw buyer, who falsely indicated that she resided at the Property in order to secure a lower interest rate, "was never going to be the primary resident of that property." *See* G.A. 165. In fact, Bayfield intended to reside at the Property, and did so until he began serving his sentence in connection

2

with the conviction appealed from here. Bayfield argues that evidence of this False Deed was unfairly prejudicial character evidence in violation of Federal Rules of Evidence 403 and 404, and that its admission was therefore an abuse of the district court's discretion. We conclude that the district court properly admitted evidence of the False Deed pursuant to Rule 404(b).

We review a district court's evidentiary rulings for abuse of discretion. *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001). We will overturn such a ruling only if it "cannot be located within the range of permissible decisions or is based on a clearly erroneous factual finding or an error of law." *United States v. Scully*, 877 F.3d 464, 474 (2d Cir. 2017) (internal quotation marks omitted). Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). But such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. Our Circuit takes an "inclusionary approach" designed to admit evidence "for any purpose other than to demonstrate criminal propensity." *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (internal quotation marks omitted). But our precedent requires that "the reviewing court consider[] whether (1) [the evidence] was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant."[1] *U.S. v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (*per curiam*); *see also Huddleston v. United States*, 485 U.S. 681, 691–92

---

[1] Since Bayfield did not request a special limiting instruction on this point, we need not address this element of the Rule 404 analysis. *See United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) ("No limiting instruction was requested here, and so we limit our analysis to the first three factors.").

(1988). This analysis incorporates the balancing test required under Rule 403. *See United States v. Scott*, 677 F.3d 72, 83 (2d Cir. 2012); *U.S. v. Curl*ey, 639 F.3d 50, 56 (2d Cir. 2011) (explaining that the Second Circuit's 404(b) test admits "other act" evidence "that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402").

It was well within the district court's discretion to admit evidence of the False Deed pursuant to Rule 404(b). Contrary to Bayfield's arguments, the False Deed was evidence of more than a mere propensity to create fraudulent documents. Rather, it was probative of Bayfield's specific knowledge that the Property had been transferred during the period to which the False Deed was backdated, and of Bayfield's intention that he—rather than the straw buyer—would reside at and control the Property. The district court correctly determined that Bayfield had put knowledge and intent at issue. While cross-examining a testifying co-conspirator, Bayfield's counsel elicited testimony that the individuals who submitted a false bank statement would not have required Bayfield's express permission to do so, and that Bayfield had gone to significant effort to rehabilitate the Property. This testimony raised the inference that Bayfield did not actually know of the fraudulent documents submitted to the mortgage issuers, and that his interest in the properties was purely legitimate. The fact that he had falsified a deed to cement one object of the fraudulent transactions—his continued control of the Property following the straw sale—is relevant to the government's foreclosing that line of defense. *See United States v. Edwards*, 342 F.3d 168, 177 (2d Cir. 2003) (noting that evidence of uncharged acts is admissible when there is a "tangible connection between the acts").

Likewise, we do not find that the risk of unfair prejudice stemming from the False Deed substantially outweighed its probative value. The trial record is replete with evidence that Bayfield

4

arranged for his coconspirators to create and file numerous fraudulent documents, all in furtherance of a scheme to mislead financial institutions and enrich himself. The False Deed evidence was thus probative as to knowledge and, at the same time, unlikely to "unfairly . . . excite emotions" and prejudice him in the eyes of the jury. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997). We conclude that the district court properly exercised its discretion in admitting this evidence.

## II. Bayfield's Sentence

At sentencing, when the district court calculated the applicable sentence under the United States Sentencing Guidelines (the "Guidelines"), it included a two-point enhancement pursuant to § 3B1.3 of the Guidelines, which provides for such an enhancement if "the defendant . . . used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Then, having determined that the Guidelines range was too low to reflect the seriousness of Bayfield's crimes, the district court recalculated his sentence under the "shadow guidelines" promulgated by the American Bar Association ("ABA") as "a proposed federal sentencing guideline to effectuate" reforms "in the sentencing of federal economic crimes." *See* Am. Bar Ass'n, *A Report on Behalf of the American Bar Association Criminal Justice Section Task Force on the Reform of Federal Sentencing for Economic Crimes* (2014), https://www.americanbar.org/content/dam/aba/publications/criminaljustice/economic_crimes.pdf. Bayfield challenges the procedural reasonableness of the district court's sentence because, in his view, the "special skill" enhancement is inapplicable to Bayfield's schemes, which did not benefit directly from Bayfield's expertise in short sales. The government does not address this point, but concedes that it was error to include that enhancement in its Guidelines calculation alongside an equivalent enhancement reflecting Bayfield's "aggravating role" in the conspiracy. *See United*

5

*States v. Thorn*, 317 F.3d 107, 122 (2d Cir. 2003) ("[T]he District Court . . . could not apply [the special skill] enhancement in this case because it had already applied an aggravating role enhancement under § 3B1.1."); *see also* U.S.S.G. § 3B1.3 ("[I]f this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).").

"In most cases[,] a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome," and is entitled to resentencing. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). But "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." *Id*. In particular, "[t]he record in a case may show . . . that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range," or a judge's "detailed explanation . . . could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines." *Id*. at 1346–47; *see also United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) ("Where we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." (internal quotation marks omitted)). That said, where "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez, 136 S. Ct.* at 1347.

The government urges us to find this error harmless because the district court considered even the erroneously inflated Guidelines sentence to be too low and consequently based its

sentence on factors independent of the Guidelines.[2] And we have no doubt that the district court would have turned to the ABA's guidelines even if it had calculated the Guidelines sentence correctly. But it is not clear from the record that the district court would have imposed the same sentence under those alternative guidelines had it appreciated the official Guidelines' limitations on combining enhancements for a defendant's aggravated role and special skills. Indeed, Judge Vitaliano's primary reason for departing from the official Guidelines was that they insufficiently accounted for the victims' losses in this case. From his discussion, we can assume that when he departed from the rules governing the role of victims' losses in determining a Guidelines sentence, that deviation was purposeful. But when he recalculated the appropriate offense level under the ABA guidelines, he raised Bayfield's offense level not only through "Victim Impact" enhancements, but also through "Culpability" enhancements that reflected, *inter alia*, the same real estate skills that could not have contributed to its calculation of the appropriate Guidelines range. Since the district court's decision to depart from the Guidelines did *not* explicitly reflect a policy disagreement with how the Guidelines treat special skills (*i.e.*, by ignoring them when the sentence already imposes an aggravated-role enhancement), it is impossible for us to say whether Judge Vitaliano would have deferred to these Guidelines rules in determining the sentence had he recognized what those rules were.

Since we cannot be certain on the record before us that the district court's error played no role in the ultimate sentence, we remand with a direction that the district court indicate on the record whether due consideration of the rules limiting the applicability of "special skill"

---

[2] Furthermore, in selecting an above-Guidelines sentence, the district court may have been comforted by the fact that the sentence provided by the ABA rubric was not significantly higher than what the district court erroneously believed to be the guidelines range.

7

enhancement would have made a difference in the sentence imposed. *See generally United States v. Jacobson,* 15 F.3d 19 (2d Cir. 1994). If the district court indicates on remand that the sentence would have been the same as originally imposed, the procedural error is harmless. But if the district court indicates that it would have imposed a different sentence had it correctly applied U.S.S.G. § 3B1.3, it is directed to vacate the sentence, arrange for defendant's appearance, and proceed to resentencing. *See United States v. Romeo*, 385 Fed. App'x 45, 50–51 (2d Cir. 2010). After the district court has either affirmed that it would have imposed the same sentence were it not for the Guidelines error or vacated its original sentence and imposed a new one, either party may restore jurisdiction to this Court within 30 days of the entry of a final order by letter to the Clerk's Office (attaching a copy of the relevant order). In that event, no new notice of appeal or additional filing fee will be required, and any reinstated appeal will be assigned to this panel.

We have considered Bayfield's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** Bayfield's conviction and **REMAND** his sentence for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8